IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2008

## STATE OF TENNESSEE v. EDWARD LEON DAVIS

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5828     J. Weber McCraw, Judge**

**No. W2007-02626-CCA-R3-CD  - Filed March 5, 2009**

The defendant, Edward Leon Davis, was convicted by a jury of delivery of a Schedule II controlled substance (cocaine) weighing more than .5 grams, a Class B felony.  For his conviction, the defendant received a sentence of ten years. On appeal, the defendant raises the following issues: (1) whether the trial court erred in denying the defendant's motion for a mistrial; (2) whether the evidence was sufficient to sustain his conviction; (3) whether the trial court imposed an excessive sentence; and (4) whether the trial court erred in denying the defendant probation or alternative sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Kari I. Weber, Assistant Public Defender, Somerville, Tennessee, for the appellant, Edward Leon Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

The defendant was convicted of unlawfully, feloniously and knowingly delivering .5 grams or more of cocaine, a Schedule II controlled substance.  Following a sentencing hearing, the defendant was ordered to serve a ten-year sentence in the Tennessee Department of Correction.  The following relevant testimony was presented at the defendant's trial.  Officer George Allen Freeman with the Fayette County Sheriff's Department testified that on January 26, 2006, he was working in the narcotics unit and assigned Officer Brian Massey to work undercover driving a truck which was loaded with bales of hay.  According to Officer Freeman, an informant accompanied Officer Massey

to the defendant's home in an attempt to purchase narcotics. Officer Freeman followed the truck driven by Officer Massey and listened to conversations initiated by Officer Massey through a cellular telephone carried in Officer Massey's pocket. Officer Freeman observed Officer Massey travel to the defendant's home, then listened to the conversation between the defendant and Officer Massey. Upon leaving the defendant's home, the truck driven by Officer Massey passed Officer Freeman and traveled toward Williston. Officer Freeman followed the truck and observed it turn onto Sain Road. Officer Freeman stated that he did not follow the truck onto Sain Road, but continued on toward Williston, turned around and waited for the truck driven by Officer Massey to reappear. Officer Freeman spotted the truck as it left Sain Road and followed it back to the defendant's house. He continued to monitor activity in the truck through the open cellular telephone line.

On cross-examination, Officer Freeman confirmed that he was listening to the conversation between Officer Massey and the defendant on the open cellular telephone line, but did not see the transaction between the defendant and Officer Massey. He agreed that the cocaine received by Officer Massey came from a house other than the defendant's home.

Officer Brian Massey testified that on January 26, 2006, he was working undercover for the narcotics unit of the Fayette County Sheriff's Department. An informant called the defendant to arrange a meeting between the defendant and Officer Massey at the defendant's home. At approximately 9:30 a.m., accompanied by the informant, Officer Massey drove a truck provided by the sheriff's department to the defendant's home. Upon arrival, the informant spoke with the defendant and then introduced Officer Massey. The defendant's elderly mother was also present in the home but in a different room. Officer Massey stated that the defendant told him that they "needed to run up the road to pick up the drugs." The defendant requested that the informant stay at his house with his mother while Officer Massey drove the defendant to another house located on Sain Road. Officer Massey stated that en route to the house on Sain Road, he paid the defendant $120 for the drugs and $20 for doing the deal. Officer Massey explained that the price for 3.2 grams of cocaine, known as "an eightball," had been negotiated by the defendant in a telephone call just before they left the defendant's house.

Officer Massey testified that when they reached Sain Road, the defendant asked to be dropped off directly in front of the house. The defendant told Officer Massey to drive to the end of the road and wait for his return. While the defendant was inside the house, Officer Massey gave a narrative description of what had transpired for the benefit of listeners on the open cellular telephone line. After a few minutes, Officer Massey witnessed the defendant exit the house. Officer Massey pulled in front of the house, the defendant got into the truck, and they proceeded back toward the defendant's house. While driving back, the defendant handed Officer Massey several rocks of cocaine wrapped in plastic. Upon arrival, the defendant asked Officer Massey to smoke the cocaine with him. Officer Massey declined to share the drugs with the defendant. Officer Massey told the defendant that he knew if he smoked now, he would not get the hay unloaded from the truck. The defendant exited the truck and went into his house. Shortly thereafter, the informant came out of the defendant's house and got into the truck. Officer Massey immediately placed the cocaine delivered by the defendant in an evidence bag, sealed the bag, and wrote his initials, "BM," over the seal. After driving the informant home, Officer Massey delivered the evidence bag containing the cocaine

to the sheriff's department. At trial, Officer Massey identified the evidence bag as the bag containing the cocaine he received from the defendant.

On cross-examination, Officer Massey agreed that the drugs he purchased did not come from the defendant's house. In responding to a question by defense counsel, Officer Massey inadvertently mentioned a prior arrest of the defendant on drug related charges. Defense counsel immediately requested a bench conference. In a conference held outside the hearing of the jury, defense counsel moved for a mistrial asserting that Officer Massey's statement had prejudiced the defendant. The trial court denied the motion for a mistrial, and immediately gave a curative instruction to the jury to disregard Officer Massey's last statement. Cross-examination resumed and Officer Massey confirmed that he delivered the drugs to the Tennessee Bureau of Investigation for analysis.

Officer John Carter, Evidence Technician for the Fayette County Sheriff's Department, testified regarding his duty to inventory and control all narcotic evidence kept in the safe at the sheriff's department. Officer Carter identified a sealed evidence bag, described as containing "crack cocaine," marked with the defendant's name and case number. The evidence bag was initially sealed and placed in a vault at the sheriff's department and then taken to the crime lab by Officer Massey. The crime lab would have opened the bag from the bottom, inspected the contents, and resealed the bag at the bottom with their own tape. After testing, the evidence bag and its contents was returned to the evidence locker at the sheriff's department. Officer Carter stated that at the time that he retrieved the evidence bag from the locker to bring it to trial, the bag was sealed as it had been when it was returned from the crime lab.

Jessica Marquez testified that she was a forensic scientist for the Tennessee Bureau of Investigation. She stated that on approximately fifty occasions, she had qualified as an expert witness in drug identification or forensic chemistry, and had previously testified in Fayette County regarding the identification of cocaine. An authenticated copy of the lab report generated by Agent Marquez was offered into evidence and made an exhibit at trial. Agent Marquez stated that the substance addressed in her report was brought in by Officer Massey and given to the lab technician. Upon receiving the substance from the technician, Agent Marquez made a presumptive conclusion that the material in the evidence bag was a rock-like form that appeared to be cocaine base. Agent Marquez explained her process of weighing and testing the substance. According to Agent Marquez, her testing revealed that the substance weighed 1.3 grams and contained cocaine.

On cross-examination, Agent Marquez agreed that her conclusion that the rock-like substance contained cocaine was based on the analysis of two slivers of the substance. Agent Marquez acknowledged that she did not quantify the amount of cocaine actually contained in the substance. She confirmed that in obtaining the weight measurement of 1.3 grams, she weighed the entire rock-like substance.

The defendant declined to testify on his own behalf.

Based on the evidence presented at trial, the jury found the defendant guilty of delivery of a Schedule II substance (cocaine) weighing .5 grams or more. The defendant was sentenced as a standard offender to ten years, to be served at 30%, in the Tennessee Department of Correction.

## ANALYSIS
### I. Motion for Mistrial

On appeal, the defendant argues that the trial court erred in denying his motion for a mistrial. He contends that "Officer Massey's statement referring to another crime of the [defendant was] inadmissible, as governed by Rule 404(b) of the Tennessee Rules of Evidence." The defendant asserts that by "gratuitously stating that the [defendant] had committed another crime, a drug sale at his home, which is nearly identical to the crime for which he was on trial, the officer caused inadmissible evidence to come before the jury."

The statement at issue occurred during the defense counsel's cross-examination of Officer Massey as follows:

> Q [Defense Counsel]: And can you - - I think you had said you didn't really make small talk; you just asked to buy some drugs?
> A [Officer Massey]: Yes.
> Q [Defense Counsel]: But there wasn't a transaction or sale at that house; is that right?
> A [Officer Massey]: No.
> Q [Defense Counsel]: You went with him in the truck to [another person's] house.
> A [Officer Massey]: On that day. I think the other one where the transaction was there at his house has already been disposed of.
> [Defense Counsel]: Can we approach, Your Honor?
> The Court: You may.
> (WHEREUPON, a bench conference was had on the record in the presence of the jury but out of the hearing of the jury and the following proceedings were had, to-wit:)
> [Defense Counsel]: The officer has made reference to another - -
> [Assistant District Attorney]: I think you ought to instruct the jury to disregard that.
> [Defense Counsel]: I move for a mistrial. I don't think I elicited that. It just came out of his mouth.
> [Assistant District Attorney]: I think it was an inadvertent mistake.
> [Defense Counsel]: He made reference to another arrest of [the defendant] that he's not being prosecuted for. In fact, it was never prosecuted or disposed of and I think that it has tainted the jury pool in this trial.
> [Assistant District Attorney]: Oh, I don't think so. I think that he was trying to be accurate. You were asking him where - - I forget the exact questioning but it was in an effort to be accurate on your question. I think it was inadvertent but I think a corrective instruction should take care of it.
>      . . . .

The Court: I don't think I need to restate that. It draws more attention. Are you asking me - - I'm going to deny your request for a mistrial. Then we need an instruction[.]

. . . .

(Said bench conference having been completed, the following proceedings were had on the record in the presence and hearing of the jury, to-wit:)

The Court: Ladies and gentlemen, the last statement that the officer made, I'm going to ask that you disregard that, simply put it out of your mind, and please do not refer back to that in your deliberations in any way.

The decision of whether or not to declare a mistrial lies within the sound discretion of the trial court. *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000). A mistrial should be declared in a criminal case only when something has occurred that would prevent an impartial verdict, thereby resulting in a miscarriage of justice if a mistrial is not declared. *See id.*; *State v. Jones*, 15 S.W.3d 880, 893 (Tenn. Crim. App. 1999); *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (quoting *Arnold*, 563 S.W.2d at 794). A manifest necessity exists when there is "no feasible alternative to halting the proceedings." *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981). The burden to show the necessity for a mistrial falls upon the party seeking the mistrial. *Land*, 34 S.W.3d at 527. This court will not disturb the trial court's decision unless there is an abuse of discretion. *Id.* When determining whether a mistrial is necessary because inappropriate testimony was presented to the jury, this court considers the following non-exclusive factors: "(1) whether the state elicited the testimony; (2) whether the trial court gave a curative instruction; and (3) the relative strength or weakness of the state's proof." *State v. Lawrence Taylor*, No. W2002-00183-CCA-R3-CD, 2003 WL 402276, at *4 (Tenn. Crim. App., at Jackson, Feb. 14, 2003).

Officer Massey's comment was improper and inadmissible under Rule 404(b). However, upon a review of the record, we conclude that the information was not so prejudicial as to necessitate a mistrial. First, the state did not elicit the testimony at issue. The witness made the statement on his own volition in response to a question by defense counsel. Second, the trial court immediately gave a curative instruction telling the jury to disregard the statement. On appeal, we must assume that the jury followed the trial court's explicit instructions not to consider the particular comment. *State v. Smith*, 893 S.W.2d 908, 923 (Tenn. 1994). Third, and perhaps most decisively, the state's case against the defendant was strong and suggests that the jury would have been compelled to convict the defendant in the absence of the erroneous comment. Officer Massey testified that he met with the defendant, discussed the price of the drugs with the defendant, paid the defendant, and received the drugs from the defendant. Officer Freeman testified that he heard the transaction between the defendant and Officer Massey on an open cellular telephone line. Agent Marquez testified that scientific analysis confirmed that the rock-like substance, identified by Officer Massey as received from the defendant, weighed 1.3 grams and contained cocaine.

The defendant has not demonstrated a manifest necessity for a mistrial. Accordingly, we conclude that the trial court did not abuse its discretion and the defendant is not entitled to relief on this issue.

## II. Sufficiency of the Evidence

The defendant argues evidence presented at trial was insufficient to establish that "he was the person responsible for selling the drugs." The defendant asserts that "the failure of the officers to arrest all persons involved in the alleged drug transaction on January 26, 2006, and confirm their identities and involvement calls the identification of [the defendant] at trial into question." The defendant further argues that the state did not prove the weight of the cocaine exceeded .5 grams.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319(1979) (emphasis in original). The appellate court does not re-weigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to the evidence are resolved by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

To establish the defendant's guilt on the offense, the state had to prove that the defendant knowingly delivered cocaine, a Schedule II substance in an amount of .5 grams or more. Tenn. Code Ann. § 39-17-417. "Deliver" or "delivery" is "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." *Id.* § 39-17-402(6).

At trial, the evidence showed that an informant called and arranged for a meeting between the defendant and Officer Massey. The defendant and Officer Massey met and discussed the price of the drugs at the defendant's home. The defendant and Officer Massey traveled to another location, and Officer Massey paid the defendant $140. Shortly thereafter, the defendant handed Officer Massey the cocaine wrapped in plastic. The rock cocaine was tested and weighed 1.3 grams. The fact that the defendant obtained the drugs from another person's home does not relieve the defendant of culpability. *See State v. Adell Watkins*, No. W2007-00691-CCA-R3-CD, 2008 WL 2521225 (Tenn. Crim. App., at Jackson, June 25, 2008) (upholding conviction for delivery and sale of cocaine where evidence showed that the defendant was not the only person involved in the transaction). Moreover, "the State need not prove that the pure cocaine in the contraband substance weighed .5 grams or more, so long as the weight of the cocaine combined with the other substances

totaled .5 grams or more." *State v. Howard Kareem Atkins*, No. 02C01-9805, 1999 WL 241870, at *1 (Tenn. Crim. App., at Jackson, Apr. 26, 1999) (citing *State v. Alcorn*, 741 S.W.2d 135, 138 (Tenn. Crim. App. 1987). Special Agent Margquez testified that the substance identified as received from Officer Massey weighed 1.3 grams. Therefore, we conclude that evidence at trial was sufficient to sustain the finding that the defendant delivered a Schedule II controlled substance, cocaine, in an amount of .5 grams or more to Officer Massey. Accordingly, the defendant is not entitled to relief as to this issue.

### III. Excessive Sentence

On appeal, the defendant argues that the trial court erred by imposing an excessive sentence of ten years imprisonment. The defendant claims that greater weight should have been given to the mitigating factor and the evidence that "the drugs involved did not come from [the defendant's] home."

When a defendant challenges the length and manner of service of a sentence, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S. W.2d 166, 169 (Tenn. 1991). On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentencing decision was improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. We will uphold the sentence imposed by the trial court if: (1) the sentence complies with our sentencing statutes, and (2) the trial court's findings are adequately supported by the record. *See State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001); *see also* Tenn. Code Ann. § 40-35-210. If this court determines that the sentence is erroneous, it "may affirm, vacate, set aside, increase or reduce the sentence imposed or remand the case or direct the entry of an appropriate order." *Id.* § 40-35-402(c).

The mechanics of arriving at an appropriate sentence are spelled out in the Criminal Sentencing Reform Act of 1989 and its amendments. The trial court is free to select any sentence within the applicable range so long as the length of the sentence complies with the purposes and principles of the Sentencing Act. *Id.* § 40-35-210; *see also State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (noting that such principles encompass themes of punishment fitting of the crime, deterrence, and rehabilitation). However, the trial court is required to place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." Tenn. Code Ann. § 40-35-210(d). Once applied, the chosen enhancement factor becomes a sentencing consideration subject to review under Tennessee Code Annotated section 40-35-401(c)(2). Thus, while the court can weigh enhancement factors as it chooses, the court may only apply the factors if they are "appropriate for the offense" and "not already an essential element of the offense." *Id.* § 40-35-114.

In conducting a de novo review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App.2001).

In the instant case, the defendant was convicted of a Class B felony. *See* Tenn. Code Ann. § 39-17-417(c)(1). The sentencing range for a Class B felony is between eight and twelve years for a Range I, standard offender. The court found one mitigating factor and one enhancement factor were applicable. Specifically, the court found that the defendant's crime was mitigated because his conduct neither caused or threatened any serious bodily injury, but was enhanced by a previous history of criminal convictions. *See* Tenn. Code Ann. §§ 40-35-113(1), -114(1). The record reflects that the court considered the presentence report, sentencing principles, "the nature and characteristics of the conduct involved" and factors required under Tennessee Code Annotated section 40-35-210(b). According to the presentence report, the defendant had been convicted of sexual battery, possession of drug paraphernalia, possession of drugs, driving under the influence, reckless driving, driving on a revoked license and violation of the Sex Offender Registry and Monitoring Act. The record supports the trial court's application of the enhancement and mitigating factors, and the defendant was sentenced within the appropriate range and classification of the offense to which he was convicted. Therefore, we conclude that the trial court did not err in imposing a ten-year sentence for the defendant's conviction. The defendant is without relief as to this issue.

## IV. Alternative Sentencing

The defendant next argues that the trial court erred by denying some form of alternative sentencing. He asserts that his record did not present a long history of criminal conduct and does not show that measures less restrictive than confinement had been frequently or recently unsuccessfully applied to the defendant. The defendant asserts that the trial court did not articulate that confinement was necessary to "avoid depreciating the seriousness of the offense," nor did the trial court find that confinement was necessary to provide an effective deterrent. The defendant further contends that evidence at trial "indicate[d] that he was a middle man between the purchaser and the drug dealer"and asserts that "the nature of the offense [did] not outweigh all factors favoring sentencing other than confinement."

The crime for which the defendant was convicted occurred on January 26, 2006, after the enactment of the 2005 amendment to our sentencing law. The 2005 sentencing amendment deleted the sentencing provision granting a defendant a presumptive favorability for an alternative sentence. Under the 2005 amendment, a defendant convicted of a Class C, D, or E felony and sentenced as a standard or mitigated offender "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn Code Ann. § 40-35-102(6). Evidence to the contrary may be established by showing that:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

*Id.* § 40-35-103(1)(A)-(C)). However, the statute specifically states that "[a] court shall consider, but is not bound by, this advisory sentencing guideline." *Id.* § 40-35-102(6).

In making its determination, the trial court shall also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. *Id.* § 40-35-210(b)(5) (2006); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

Because the defendant in this case was convicted of a Class B felony, he is not entitled to be considered as a favorable candidate for an alternative sentence. Nonetheless, he remains eligible for an alternative sentence because his sentence was ten years or less and the offense for which he was convicted is not specifically excluded by statute. *See* Tenn. Code Ann. § 40-35-102(6), -303(a) (2006).

Although probation must be considered, "the defendant is not automatically entitled to probation as a matter of law." *Id.* § 40-35-303(b) (2006), Sentencing Comm'n Cmts; *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). Rather, a defendant is required to establish his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); Tenn. Code Ann. § 40-35-303(b). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

From the record, we glean that the trial court imposed a sentence of confinement based primarily on the finding that the defendant had a criminal history and that the defendant had recently been granted measures less restrictive than confinement and that such measures were not successful. *See* Tenn. Code Ann. § 40-35-103(1)(A), (C). In denying the defendant's request for alternative sentencing, the trial court stated that it "reviewed the pre-sentencing report, [and] also considered the defendant's physical and social history." The court said it "considered [the defendant's] prior criminal history, previous actions and characteristics of the defendant." The trial court reported that in reviewing the presentence report, it considered whether or not there existed a reasonable expectation that the defendant might be rehabilitated, whether there was a risk during any probation period he would commit another crime, and the reasonable likelihood that the defendant would abide

-9-

by terms of probation. Upon review, we note that the defendant's presentence report shows a history of criminal conduct including convictions for traffic offenses as early as 1990, a sexual battery offense in 1996, and two drug related offenses in 2001. The presentence report also shows that at the time of the drug delivery offense, the defendant was on probation for violating the Sexual Offender Registry Act. Therefore, the court's denial of alternative sentencing is supported by the record, and we discern no abuse of discretion in the court's sentence of confinement. The defendant is not entitled to relief on this issue.

## CONCLUSION

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE